IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH THOMAS,  )<br>On behalf of himself and all others  )<br>similarly situated  )<br>  )<br>              Plaintiff,  )<br>  )<br>     vs.  )<br>  )<br>CENDANT MORTGAGE  )<br>  )<br>              Defendant.  )<br>  ) | <br><br><br><br>Civil Action No.  03-1672 (TON)<br><br><br><br><br><br>CLASS ACTION |

**PLAINTIFF JOSEPH THOMAS' MEMORANDUM OF LAW IN RESPONSE AND
OPPOSITION TO DEFENDANT CENDANT MORTGAGE'S MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

This is a consumer class action brought against Defendant Cendant Mortgage ("Cendant") based upon its violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681 *et seq.*, *as amended*. The central claim is that Cendant violated the FCRA by failing to timely and properly notify mortgage applicants of the adverse lending decisions that it made based upon its evaluation and review of their credit reports.[1] Plaintiff Joseph Thomas, a victim of identity theft who was impaired from obtaining credit due to inaccuracies on his credit reports, brings this action on behalf of himself and hundreds, if not thousands, of persons who sought mortgage loans from Defendant Cendant Mortgage ("Cendant"), and whose applications were

---

[1] As discussed below, the FCRA requires a lender (including a mortgage company) to immediately notify a consumer applicant of any action it takes or determination it makes (e.g. a loan denial) that is adverse to the consumer's interests if the action or determination is based, in part, upon information contained in a credit report (referred to as a "consumer report" under the FCRA). Such notification includes detailed information about the source of the credit information and the consumer's rights under the FCRA to obtain a copy of the report and dispute any errors contained within it. 15 U.S.C. §1681(m); *see also Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143 (5th Cir. 1983) and *Drury v. TNT Holland Motor Express, Inc.*, 885 F. Supp. 161 (W.D. Mich. 1994), discussed *infra*.

either denied or approved subject to payment of higher interest rates, fees, points, charges, penalties and/or other unfavorable terms.[2]

Defendant now moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.

Defendant moves to dismiss on two separate bases. First, it argues that Plaintiff's Complaint is not pled specifically enough because it does not contain the magic language that the loan Plaintiff was seeking was "primarily for personal, family or household purposes." (Defendant's Brief at 5). Given the detailed allegations set forth within Plaintiff's Complaint, the Court should not afford this argument the time of day. The Complaint specifically states that Plaintiff was seeking a mortgage loan and that he is a "consumer" under the FCRA. Any quick review of Plaintiff's Complaint reveals that it more than adequately satisfies federal court notice pleading requirements.

In further support of its motion to dismiss, Defendant asserts that Fannie Mae and Freddie Mac are not consumer reporting agencies as a matter of law. This argument fails for multiple reasons. First, Plaintiff's Complaint states in no uncertain terms that Fannie Mae and Freddie Mac provided credit information about the Plaintiff and putative class members to Defendant. (Complaint, ¶10-17). At the early stage of a motion to dismiss, these allegations must be accepted as true. Second, the only federal court that has been confronted with the claim that Fannie Mae or Freddie Mac were consumer reporting agencies has specifically allowed such a claim to survive a Rule 12(b)6 challenge.[3] Perhaps most importantly, Plaintiff's claim does not rise or fall on the status of Fannie Mae and Freddie Mac. Rather, Plaintiff has alleged that

---

[2] In bringing this class action, Plaintiff does not advance any novel or cutting edge theories. Rather, FCRA class actions based upon a defendant's failure to provide timely and proper notice of adverse action may be eminently suitable for class certification. *See Braxton v. Farmer's Insurance Group,* 209 F.R.D. 654 (N.D. Ala. 2002) (certifying FCRA class of consumers who were not provided with timely notice of adverse action).

[3] *See Weidman v. Federal Home Loan Mortgage Corporation*, C.A. No. 02-7990 (E.D. Pa., J. Bartle), discussed *infra*.

2

Defendant obtained credit information from other consumer reporting agencies, such as CBC Companies, Equifax, Experian and Trans Union, and that it failed to provide notice of adverse action that it took based upon the information provided by *these* companies. (Compl. ¶¶7-9, 20-21, 23). As a result, Defendant's motion to dismiss should be denied in its entirety.

In a bold move, Defendant also moves for summary judgment, arguing that there are no disputed facts to support Plaintiff's claim that it failed to provide timely and adequate adverse action notification regarding Plaintiff's mortgage loan denials. In support of this motion, Defendant relies upon a declaration obtained from one of its representatives. Not surprisingly, as demonstrated by Plaintiff's own declaration, many of the pivotal facts surrounding Plaintiff's mortgage applications and his communications with the Defendant are in significant dispute. The existence of these disputed facts precludes summary judgment. What is surprising, however, is that the version of events recounted by Defendant's representative would actually support a summary judgment ruling in favor of the plaintiff. As discussed below, it is undisputed that Defendant made two separate adverse lending decisions based upon Plaintiff's low credit scores, yet failed to notify him contemporaneously therewith as required by the FCRA, or even within 30 days as required by the Equal Credit Opportunity Act, 15 U.S.C. §1691 *et seq*. It is apparent that Defendant only sent its alleged December 27, 2001 letter to Plaintiff upon his repeated requests for the reasons of his loan denials.

Neither of Defendant's motions is supported by any statutory authority or relevant caselaw. Further, Defendant's alternative motion for summary judgment not only lacks merit, but also seeks a ruling that would eviscerate the FCRA's clear adverse action notification

requirements by giving lenders an indefinite time to provide adverse action notification or provide it only upon request.[4]

## I.   FACTS AND ALLEGATIONS

On or about September 6, 2001, Mr. Thomas, an individual consumer, applied for a mortgage loan from Cendant. (Compl. ¶ 22, 34). In connection with Plaintiff's application, and as part of its underwriting process, Cendant obtained a consumer report concerning Plaintiff from CBC Companies, as well as, from the Trans Union, Experian and Equifax consumer reporting agencies. (Compl. ¶ 23). At least in part as a result of the credit history information and credit scores contained in the consumer report Cendant obtained on the Plaintiff, Cendant denied Plaintiff's application at that time. (Compl. ¶ 24; Declaration of Joseph Thomas of June 24, 2003 ("Plaintiff's Declaration") at ¶3, attached hereto as Exhibit A.).

Despite its decision, Defendant did not provide Plaintiff with any information about the denial other than that it was because of his "credit." (Plaintiff's Declaration at ¶3). After being denied, Plaintiff applied again with Defendant to see if there was a different mortgage loan product that he could get approved for. *Id.* at 4. When he had not heard anything for weeks, he again contacted the Defendant in November or December of 2001, and requested the status of his application. When he did not receive an explanation, he then wrote to the Defendant and requested the reasons why he had been denied. *Id.* at 5. Only after his repeated requests, Defendant finally sent a letter to him in late December 2001 (December 27) explaining the action taken on his application, the credit reporting agency that it had used in connection with his application and a summary of his FCRA rights as set forth under 15 U.S.C. §1681m.

---

[4]   In its very first footnote, Defendant launches a not so subtle attack on Plaintiff's counsel in an attempt to discredit them for appearing as counsel in other cases involving similar claims against other companies. The mere fact that there may be other companies alleged to have engaged in the same conduct as Defendant here is of no consequence to the instant matter. Class actions based upon a defendant's failure to provide timely adverse action notification appear before federal courts throughout the country and with different counsel. *See Braxton, supra.* Plaintiff respectfully asserts that such impertinent matter should be disregarded by the Court.

In his Complaint, Plaintiff alleges, upon information and belief, that Cendant *also* obtained certain credit information about him from the Federal Home Loan Mortgage Corporation ("Freddie Mac") and/or the Federal National Mortgage Association ("Fannie Mae"), through reports obtained via Freddie Mac's *Loan Prospector* ("LP") and/or Fannie Mae's *Desktop Underwriter* ("DU") automated underwriting systems.  (Compl. ¶¶ 11-24).  These LP and DU automated underwriting systems provided findings, comments and conclusions concerning Plaintiff's credit history, credit risk classification, credit scores, debt-to-income ratio and loan purchase eligibility that contributed to Cendant's determination to not approve Plaintiff's application at the most favorable terms and competitive rate available.   (*Id.* at ¶¶16-24).

Despite the fact that it took adverse action against Plaintiff by denying his mortgage loan application based upon the consumer report(s) it obtained, Cendant failed to timely notify Plaintiff of the adverse action, or that it based its decisions on a consumer report and/or other report from a third party, as required by the FCRA.   (Compl. ¶ 26).

Additionally, Cendant has failed to timely provide Plaintiff with:  (a) the name, address and telephone number of the consumer reporting agency from whom it obtained consumer reports, including their toll free numbers; (b) a statement that the consumer reporting agency did not make the adverse action and is unable to provide him with the specific reason why the the lender took an adverse action; (c) notice of Plaintiff's right to obtain a free copy of a consumer report from the consumer reporting agency or agencies that furnished the consumer reports it obtained; and (d) notice of Plaintiff's right to dispute the accuracy or completeness of any information contained within the consumer report(s) it obtained, as required by the FCRA. (Compl. ¶ 27; Plaintiff's Declaration at ¶6.)

Further, Cendant has failed to timely notify Plaintiff that it based its decision, at least in part, on information that it obtained from a third party, and never advised him of his right to request the reasons for the adverse action it took and the nature of the information contained within the reports that it obtained from third parties such as Freddie Mac and/or Fannie Mae, as required by the FCRA.   (Compl. ¶ 28).

As a result of Defendant Cendant's failure to provide Plaintiff with these important disclosures required by the FCRA, Plaintiff was unable to discover in a timely fashion the information that Defendant had obtained and learn of the true reasons why his application was not approved and why Cendant took adverse action on his application. (Compl. ¶ 29).[5]

## II. ARGUMENT

### A. Plaintiff's Complaint Properly Pleads A Cause Of Action Under The FCRA And Clearly Survives Defendant's Motion to Dismiss

As this Court well knows, a motion to dismiss for failure to state a claim will be denied unless it appears that the Plaintiff can prove no set of facts that would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept as true all allegations in the Complaint and all reasonable inferences that can be drawn there from, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).  Furthermore, and pursuant to the liberal notice pleading requirements under federal civil procedure, in assessing whether a plaintiff has sufficiently stated a cause of action, a court must only determine that the plaintiff has made a short and plain statement of the facts showing that he or she is

---

[5] This type of information would have been especially important in Plaintiff's case because he was a victim of identity theft.  Indeed, false derogatory credit items in his credit file undoubtedly harmed Plaintiff's credit, and thus caused him to lose a mortgage with Cendant.  Thus, timely notice of what credit bureau was reporting this adverse and false credit information was essential to Plaintiff's attempt to identify the extent of the fraud and to quickly clear his good name and credit.

entitled to legal relief. *Rainbow Trucking, Inc. v. Ennia Insurance Co.*, 88 F.R.D. 596 (E.D. Pa. 1980).

1. **The FCRA's Immediate Adverse Action Notification Requirement**

The FCRA requires that any person who takes any action or makes any determination that is adverse to a consumer's interests on the basis of information contained within a credit (or consumer) report, must provide that consumer with notice of the adverse action.

The FCRA's adverse action notification duties are found at 15 U.S.C. §1681m:

> **§ 615. Requirements on users of consumer reports**
>
> (a) Duties of users taking adverse actions on the basis of information contained in consumer reports. If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall
> (1) provide oral, written, or electronic notice of the adverse action to the consumer;
> (2) provide to the consumer orally, in writing, or electronically
> (A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and
> (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
> (3) provide to the consumer an oral, written, or electronic notice of the consumer's right
> (A) to obtain, under section 612 [§ 1681j], a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and
> (B) to dispute, under section 611 [§ 1681i], with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

15 U.S.C. § 1681m (emphasis supplied). As stated, this section requires that any *person* who uses a consumer report, and takes any adverse action (as defined by the FCRA) against that person on the basis of information contained in the report must notify that person of the adverse action taken, and provide the disclosures contained in section 1681m(a)(2) and (3). Thus, the

proper inquiry under the FCRA is whether a person used a credit report and took adverse action on the basis of that report. *See Mick v. Level Propane Gases, Inc.,* 183 F.Supp.2d 1014 (S.D. Ohio); *Wiggins v. District Cablevision, Inc.*, 853 F. Supp. 484 (D.C. 1994)(employer who fired employee as a result of information contained in a consumer report was a user of a consumer report and liable for failing to provide adverse action).

The FCRA's adverse action notification is required to be made to a consumer regarding any action taken or determination that is made in connection with a transaction that is initiated by the consumer which is adverse to the interests of that consumer:

> The term "adverse action:"
>
> (A) has the same meaning as in section 701(d)(6) of the Equal Credit Opportunity Act; *and*
> (B) means…
>
> (iv) an action taken or *determination* that is
> (I) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 604(a)(3)(F)(ii)[§ 1681b]; and
> (II) adverse to the interests of the consumer.

15 U.S.C. §1681a(k)(emphasis supplied). Thus, as demonstrated by the plain reading of the statute, with reference to the liability conferring section of 1681m regulating users of consumer reports, adverse action occurs whenever a user of a consumer report makes a *determination* about a consumer, in connection with a "*transaction*…initiated by" the consumer that is adverse to that consumer's interests. *See Najieb v. Chrysler-Plymouth,* 2002 WL 31906466 (N.D. Ill. 2002); *Castro v. Union Nissan, Inc.*, 2002 WL 1466810 (N.D. Ill. 2002)(court finding that repossession of a car was adverse action because adverse action includes "any action taken…that is adverse to the interests of a consumer.").

Thus, to state a claim for violation of section 1681m of the FCRA, a consumer need only prove that, in connection with a loan application that he initiated, a person reached a

determination that was adverse to his interests on the basis, in whole or in part, of a consumer report.

Courts that have looked at the FCRA's legislative history have held that adverse action notification must be provided contemporaneously or immediately with the adverse action taken. *See Drury v. TNT Holland Motor Express, Inc.,* 885 F. Supp. 161 (W.D. Mich. 1994); *Carroll v. Exxon Co., USA*, 434 F.Supp. 557, 560 (E.D. La. 1977). As explained in *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143 (5th Cir. 1983), Congress wanted the notice to be made concurrently with the adverse action:

> The House Amendment, which was agreed to by the conferees…now requires the user of the report to convey this information to the consumer *immediately* upon denial of credit, insurance or employment.

Conf. Rep. No. 91-1587, 91st Cong., 2d Sess., reprinted in 1970 U.S. Code Cong. & Admin. News, pp.4394, 4416(emphasis supplied). In the course of her presentation of the conference bill to the House, Representative Sullivan commented:

> The House conferees succeeded in assuring *immediate notification* to any individual, who is rejected for credit, insurance or employment because of information in a credit report, of the name and address of the agency which made the report on him. Thus, he will *automatically* be told where to look for information which may be causing him needless harm.

H.R. 15073, 91st Cong., 2nd Sess., 116 Cong. Rec. 36571 (1970)(emphasis supplied). Thus, the FCRA's legislative history makes it clear that, unlike ECOA which provides a 30 day time frame for providing adverse action notification, any user taking any adverse action on the basis of a consumer report under the FCRA must provide notify the consumer immediately and automatically at the time the action is taken. It is clear that the purpose of the immediate notification provision is to encourage consumers to access the credit information that was obtained by a third party and relied upon to their detriment in order to verify that it was accurate, and promptly correct any inaccuracies that existed at the time.

2.  **The Complaint's Factual Averments Provide Defendant With Notice That This FCRA Action Concerns Plaintiff's Denial Of A Loan For Personal, Family Or Household Purposes**

Defendant argues that since the FCRA applies to consumer (and not commercial) transactions, Plaintiff's Complaint must be dismissed because it does not allege, pursuant to 15 U.S.C. § 1681a(d)(1), that Plaintiff sought a loan for "personal, family or household purposes." (Defendant's Brief at 5). Not surprisingly, Defendant cites no case law or any other authority that stands for the proposition that an FCRA complaint must be dismissed unless it specifically alleges that the plaintiff engaged in a transaction concerning "personal, family or household purposes." Rather, the generally accepted rule in federal notice pleading is that no "magic words" are necessary so long as the complaint gives notice to the defendant of the claim in a "short and plain statement." Fed. R. Civ. P. 8(a); *see Rainbow Trucking, Inc. v. Ennia Insurance Co.*, 88 F.R.D. 596 (E.D. Pa. 1980); *Parente v. Bell Atlantic Pennsylvania*, 2000 WL 419981, *1 (E.D.Pa. Apr. 18, 2000) (no magic words necessary); *Western States Ins. Co. v. Wisconsin Wholesale Tire, Inc*., 184 F.3d 699, 701-02 (7th Cir.1999) ("A complaint need not use magic words, but it must sketch a claim that is within the scope of the policy"); *Alexander v. City of Chicago*, 994 F.2d 333, 340 (7th Cir.1993) (holding that there is no need to plead magic words in notice pleadings); *Cabrera v. Martin*, 973 F.2d 735, 745 (9th Cir.1992) ("We therefore find no reason to reverse the district court on the grounds that the appellees . . . failed to use the magic words 'under color of state law'").

In this case, Plaintiff alleged in his Complaint that he applied for a "mortgage" with Defendant Cendant and that Cendant obtained his "consumer report" in connection with his application. (Compl. ¶¶ 22-24). Moreover, Plaintiff alleged that he is "a 'consumer' as that term is defined by 15 U.S.C. § 1681a(c)." (Compl. ¶ 34). Finally, Plaintiff alleged Defendant "Cendant was a 'user' of a consumer report as that term is defined by the FCRA. (Compl. ¶ 30).

There can be no doubt that the above factual averments provided sufficient notice to Defendant that Plaintiff was engaging in a consumer transaction – namely, the application for a mortgage – concerning "personal, family or household purposes." Nor is there doubt that the Complaint provided Defendant with sufficient notice to understand Plaintiff's claim and be able to defend against it. Indeed, based on the factual averments of the Complaint alone, Defendant was able to identify the particular Veteran Affairs ("VA") loan for which Plaintiff applied, the exact credit information that it reviewed in connection with the application, as well as the chronology and other particulars of the loan application process. (*See* Defendant's Brief at 9). In short, Plaintiff's Complaint demonstrably and admittedly provided Defendant with sufficient information from which it, in fact, determined that Plaintiff was applying for a VA mortgage for a home – i.e., a transaction concerning "personal, family or household purposes." Accordingly, Defendant's Motion to Dismiss the Complaint on the basis that it did not provide defendant notice of a consumer transaction lacks merit, and therefore should be denied.

    **3.    Defendant's Argument That Fannie Mae And Freddie Mac Are Not "Consumer Reporting Agencies" As A Matter Of Law Is Premature, Devoid Of Legal Support And Not Dispositive Of This Case In Any Event**

Defendant also argues that the Complaint should be dismissed because it asserts that Fannie Mae and Freddie Mac are "consumer reporting agencies," when as a matter of law, they are not. (Defendant's Brief at 5). This argument lacks merit at several levels.

As a threshold matter, Defendant provides no legal support whatsoever to this Court holding that Fannie Mae and Freddie Mac are not consumer reporting agencies, as Defendant contends. Rather, Defendant baldly concludes that Fannie Mae and Freddie Mac are not consumer reporting agencies because they do not provide "consumer reports" to Cendant, as that phrase is construed under the FCRA. What is relevant at the motion to dismiss stage, however, is what Plaintiff has alleged.

Defendant must concede that Plaintiff has specifically pled that Fannie Mae and Freddie Mac did in fact provide Cendant with credit information – namely, findings, comments and conclusions concerning Plaintiff's credit history, credit risk classification, credit scores, debt-to-income ratio and loan purchase eligibility- and that they acted as consumer reporting agencies. (Compl. ¶ 24).  This information meets the definition of consumer report. In order to fall within the definition of "consumer report," a communication must bear on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode or living."  15 U.S.C. §1681a(d).  Since a report need only bear on one of these seven factors, almost any information about a consumer satisfies this part of the definition of consumer report. *See Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809 (D.C. Cir. 2001).  Plaintiff's Complaint alleges that the information that Cendant receives from Fannie Mae and Freddie Mac bears on all of these factors, not one of them. Defendant must also concede that no court has ever held that such information cannot be credit "information" under the FCRA.

Importantly, Defendant cites no case law in support of its broad proposition that Fannie Mae and Freddie Mac are not consumer reporting agencies as a matter of law.  Nevertheless, just recently, the Eastern District of Pennsylvania was confronted with an FCRA class action against Freddie Mac which specifically claimed that Freddie Mac acted as a consumer reporting agency. *See Weidman v. Federal Home Loan Mortgage Corp.*, Civ. No. 02-7990 (E.D. Pa.) (Bartle, J.). On March 17, 2003, Judge Bartle denied Freddie Mac's Motion to Dismiss the Complaint in the *Weidman* case after Freddie Mac made the exact same argument that Defendant makes here, namely that its is not a consumer reporting agency as a matter of law.[6]  Thus, the only authority

---

[6]     Even though Defendant cites to every other case similar to the instant one that Plaintiff's counsel has filed in the Eastern Distinct of Pennsylvania, the *Weidman* case is curiously absent from Defendant's string cite.  Judge Bartle's Order in *Weidman* of March 17, 2003, denying Freddie Mac's Motion to Dismiss, is attached hereto as Exhibit B.

12

on point is directly contrary to Defendant's position, and stands for the proposition that at least Freddie Mac, depending upon the facts adduced during discovery in that case, may be a consumer reporting agency. (*See id.*).

Moreover, even if assuming, *arguendo*, that Fannie Mae and Freddie Mac are not consumer reporting agencies as a matter of law, Plaintiff's Complaint against Cendant would still survive the present Motion to Dismiss. Plaintiff alleges that, regardless of what information it obtained from Fannie Mae and/or Freddie Mac, Cendant nevertheless based its decision to deny Plaintiff's mortgage application on credit reports that it obtained from *other* consumer reporting agencies, including CBC Companies, Equifax, Trans Union and Experian. (Compl. ¶7). Therefore, since Defendant admits that it relied upon Plaintiff's consumer credit report in denying his mortgage application,[7] it has no basis for failing to make timely and proper disclosures to Plaintiff under the FCRA. *See* 15 U.S.C. § 1681m(a) (listing disclosures that must be made to consumer by any person who takes adverse action "that is based in whole or in part on information contained in a consumer report").

In sum, even if Defendant is correct in asserting that Fannie Mae and Freddie Mac are not consumer reporting agencies, Plaintiff would still have pled a proper cause of action under the FCRA. *See* C*onley v. Gibson*, 355 U.S. 41, 45-46 (1957) (motion to dismiss must be denied unless the plaintiff can prove *no set of facts* that would entitle him or her to relief.). Accordingly, Defendant's Motion to Dismiss should be denied.

### B. Defendant's Motion For Summary Judgment Should Also Be Denied Because There Are Genuine Issues Of Material Fact That Defendant Failed To Timely And Properly Notify Plaintiff Of Adverse Action That It Took

Relying on a Declaration of a corporate representative (Exhibit A to Defendant's Motion) and a form denial letter dated March 24, 2003 (Exhibit B to Defendant's Motion), Cendant

argues that it is entitled to summary judgment because it complied with the FCRA's disclosure requirements. This argument fails because: (1) Plaintiff disputes Cendant's factual assertions about when he was declined for a mortgage, how he received information about Cendant's decision, and what type of information Cendant provided at various times; and (2) even if Cendant's version of events is accepted as true, Cendant is not entitled to judgment as a matter of law because it, in fact, admittedly failed to make a timely and proper disclosure to Plaintiff under the FCRA.

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will only be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). In other words, summary judgment may only be granted if the movant shows, by admissible evidence, that there are no genuine issues of material fact that would permit a reasonable jury to find for the nonmoving party. *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998); *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870 (1988).

The party opposing the motion for summary judgment is entitled to have his/her allegations taken as true, to receive the benefit of the doubt when his/her assertions conflict with those of the movant and to have inferences from the underlying facts drawn in his/her favor. *Big Apple, BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992), *cert. denied,* 507 U.S. 912 (1993). In analyzing the moving party's burden under Rule 56(c), the Third Circuit has stated that "[i]f there is any evidence in the record, from any source, from

---

[7] In its Brief, Defendant admits that it obtained Plaintiff's credit information and that it denied Plaintiff's mortgage application because of his poor credit. *See* Defendant's Brief at 9.

which a reasonable inference in the respondent's favor may be drawn, the moving party simply cannot obtain a summary judgment, no matter how many affidavits are filed (citations omitted) . . . . The 'burden' then is insurmountable." *In re Japanese Electronic Prods. Antitrust Litig.*, 723 F.2d 238, 258 (3d Cir. 1983), *reversed on other grounds*, 475 U.S. 574 (1986); s*ee also Boyle v. County of Allegheny, Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).

A court may not, at the summary judgment stage, weigh evidence or make credibility decisions. These tasks are left to the factfinder. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir.), *cert. denied*, 510 U.S. 994 (1993). To raise a genuine issue of material fact, the respondent need not match, item for item each piece of evidence proffered by the movant. *Big Apple, BMW, Inc.*, 974 F.2d at 1362-63. As the Third Circuit has explained:

> In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quality of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

*In re Unisys Savings Plan Litigation*, 74 F.3d 420, 433 n. 10 (3d Cir. 1996) (citing *Big Apple, BMW*). If there are gaps in the pertinent materials submitted by the movant, without explanation, that justifies denial of the motion. *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir. 1989). In the case at bar, there exist genuine issues of material fact and Defendant is not entitled to summary judgment as a matter of law.

### 1. Material Facts Are In Dispute

First, Plaintiff disputes Cendant's version of the facts. Relying on the Declaration of its corporate representative, Craig S. Reynolds, Defendant states that it denied Plaintiff's mortgage application on November 8, 2001. (Defendant's Brief at 9) (citing Reynolds Declaration at ¶

3(f)). Although Defendant admits that it reviewed Plaintiff's credit on September 6, 2001 (the day he applied for a VA mortgage), it states that at that time it merely determined that "plaintiff would not have qualified for a VA loan" due to frequent delinquencies being reported on his credit report and low credit scores. (Defendant's Brief at 9). Defendant maintains that while it could determine on the spot that Plaintiff would not have qualified for a VA loan, its actual denial of Plaintiff's application did not occur until two months later (November 8, 2001), and the actual letter informing him of the denial was not sent to Plaintiff until another six weeks after that (December 27, 2001) (Defendant's Brief at 9).

Plaintiff disagrees with these facts. As he explicitly states in his Declaration, Mr. Thomas was told by a Cendant corporate representative over the telephone in September 2001, in no unequivocal terms, that he was "denied" for the VA mortgage for which he applied. (Plaintiff's Declaration at ¶_3). At that time, Mr. Thomas chose to allow Cendant to determine whether he could qualify for any other type of mortgage, such as a sub-prime mortgage. (Plaintiff's Declaration at ¶_4).[8]

Moreover, Plaintiff disputes Cendant's assertion that it sent him an FCRA-mandated adverse action disclosure as a result of any decision that was made on November 8, 2001 and as part of its normal process of providing adverse action notifications to consumers whose mortgage applications it denies. Rather, Mr. Thomas had to ask Cendant for explanation on several occasions, and only then was a letter faxed to him on December 27, 2001. (Plaintiff's Declaration at ¶ 5). Indeed, it makes no sense to believe that the December 27, 2001 letter was sent as part of Cendant's regular procedures of giving adverse action notice even if one were to

---

[8] In his Declaration, Cendant's Craig S. Reynolds states that Defendant's records show that following the initial determination that Mr. Thomas "would not have qualified for a VA loan," Cendant pulled a "full factual credit report for the purpose of attempting to qualify an individual for a loan even though the individual has low credit scores, such as those of Mr. Thomas." (*See* Reynolds Declaration at ¶ 3(c)) (emphasis added). There is nothing in this statement that is inconsistent with Plaintiff's understanding that Cendant would determine, after denying him for one mortgage, whether he could qualify for any other type of mortgage.

believe Cendant's contention that the mortgage denial did not occur until November 8, 2001; for there exists no practical explanation or legal justification for the six week delay.

For purposes of this motion, Plaintiff takes no issue with Defendant's position that the December 27, 2001 letter was identical in substance to the March 24, 2003 form letter that it attaches to its motion as Exhibit B.  Plaintiff must take issue, however, with Cendant's suggestion that it made the proper FCRA disclosures to Mr. Thomas over the telephone.  (*See* Defendant's Brief at 6 n.4 and accompanying text).  At no time did any representative from Cendant provide Plaintiff over the telephone with:  (a) the name, address and telephone number of the consumer reporting agency from whom it obtained consumer reports, including their toll free numbers; (b) a statement that the consumer reporting agency did not make the adverse action and is unable to provide him with the specific reason why the adverse action was taken; (c) notice of Plaintiff's right to obtain a free copy of a consumer report from the consumer reporting agency or agencies that furnished the consumer reports it obtained; and (d) notice of Plaintiff's right to dispute the accuracy or completeness of any information contained within the consumer report(s) it obtained, as required by the FCRA.  (Plaintiff's Declaration at ¶ 6).

Because the aforementioned material facts are in dispute, summary judgment is inappropriate.

    **2.**    **Defendant Is Not Entitled To Judgment As A Matter Of Law**

The final leg on which Defendant can try to stand on is its contention that the December 27, 2001 letter fulfilled all of its disclosure obligations under the FCRA.  Well-settled consumer case law, Cendant's own admissions and common sense knocks out this final leg from Defendant's position.

As a threshold matter, it must be noted that the December 27, 2001 letter – assuming that it was substantively identical to the March 24, 2003 form letter that Defendant has attached to its

Motion as Exhibit B – makes no mention of either Freddie Mac or Fannie Mae. If this Court, therefore, denies Defendant's Motion to Dismiss (for the reasons discussed under part II.A of this Memorandum), then it must also find that the December 27, 2001 letter may not have disclosed all of the consumer reporting agencies and/or third parties on which Cendant relied in deciding to deny Plaintiff's mortgage application. Accordingly, summary judgment would be inappropriate.

Even if the December 27, 2001 letter contained *all* of the information that must be disclosed to consumers under the FCRA, however, Cendant still failed to send it to Plaintiff in a *timely* manner. Even assuming Defendant's version of the facts, there were two separate and distinct lending determinations (i.e. loan denials) that Cendant made concerning Plaintiff based on his credit report. The first occurred on September 6, 2001, when Cendant's representative determined that it could not qualify Plaintiff for a VA loan. At that time, Cendant was required to provide Plaintiff with the full disclosures required by section 1681m(a) of the FCRA. Cendant admits that it denied Plaintiff's application for another type of mortgage loan on November 8, 2001. (Defendant's Brief at 9). At this time, it was again required to provide Plaintiff with notice of its adverse lending determination. It did not. In fact, Defendant did not notify Plaintiff of any action it took on either of the applications until December 27, 2001, more than three months after the first application, and six weeks after the second application, when it finally sent him a letter in response to his repeated requests.

As stated above, the FCRA, requires *immediate* disclosure under Section 1681m(a). *See Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143 (5th Cir. 1983) (consumer must be send adverse action disclosure under FCRA immediately after adverse action is taken); *see also Drury v. TNT Holland Motor Express, Inc.*, 885 F. Supp. 161 (W.D. Mich. 1994) (same); *Carroll v. Exxon Co., USA*, 434 F.Supp. 557, 560 (E.D. La. 1977) (same).

Defendant has supplied this Court with no case law or other authority justifying its failure to timely notify Plaintiff of the adverse determinations that it made in connection with his mortgage loan applications.

The importance of immediate disclosure cannot be overstated.  In the mortgage context, if a lender informs a consumer immediately of a credit problem that can be corrected or obviated, that consumer can still qualify for the mortgage and not lose a home that he desires to purchase. Sellers typically will not wait for six weeks for a buyer to learn how to potentially correct a credit problem and re-apply for a mortgage.  Indeed, the FCRA's disclosure provisons were designed to quickly correct credit errors, not to harm the economy through inefficiency and delay.

Similarly, in the identify theft context, immediate disclosure can prevent immeasurable harm to both the consumer and to innocent third parties.  Identity thieves steal personal identifying information and use that information to make "purchases" on credit, without ever paying the indebtedness.  Victims of identity theft typically learn of the theft only when they are denied a loan or other credit because of delinquent, fraudulent accounts.  *See Cushman v. Trans Union Corp.,* 115 F. 3d 220 (3d. Cir. 1997).  If upon such a denial appropriate FCRA disclosures are made by the creditors *immediately*, the victim can pinpoint the problem and begin to take steps to stop the thief – such as filing a criminal complaint, freezing the fraudulent accounts that have already been reported to the credit bureaus, and placing a fraud alert on his credit report in order to present future fraud.  If the victim-consumer has to wait more than six weeks before receiving the disclosure, however, the theft can continue to be perpetuated for that much longer to the harm of both the consumer and to innocent third party creditors.[9]

---

[9] As indicated previously, Plaintiff was a victim of identity theft and had fraudulent accounts reporting on his credit report at the time of the Cendant mortgage denial.

Even consumers who have accurate derogatory credit information on their credit reports have the right under the FCRA to learn immediately about the credit problem that is causing them to be denied credit. According to Cendant, however, the FCRA requires all of the above consumers to wait more than six weeks after the adverse action until the lender, only after some prodding, finally decides to send a notice to them. Accordingly, Defendant's motions should be denied.

### III. CONCLUSION

For the reasons stated above, Defendant Cendant's alternative motions to dismiss and for summary judgment should both be denied.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

BY: _____
JAMES A. FRANCIS, ESQUIRE
MARK D. MAILMAN, ESQUIRE
JOHN SOUMILAS, ESQUIRE
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN SEARLES, LLC**
DAVID A. SEARLES, ESQUIRE
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

Attorneys for Plaintiff and the Class

Dated: June 25, 2003