IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH THOMAS, on behalf of himself and all others similarly situated, | : : : | CIVIL ACTION |
| v. | : : | |
| CENDANT MORTGAGE | : | NO. 03-1672 |

O'NEILL, J.                                      NOVEMBER 15, 2004

<u>MEMORANDUM</u>

Plaintiff, Joseph Thomas, filed a class action complaint against defendant, Cendant

Mortgage, on March 19, 2003, alleging that defendant violated two provisions of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. §§ 1681m(a) and 1681m(b) (2004).[1]  Plaintiff has filed a

motion for class certification, the consideration of which has been deferred pending decision of

defendant's motion to dismiss, or in the alternative, motion for summary judgment.  Plaintiff has

filed a response in opposition to defendant's motions, to which defendant has filed a reply.

Plaintiff later filed a surreply, and each party has filed two supplemental submissions.

BACKGROUND

Cendant is a mortgage company that has its principal place of business in New York City

and regularly conducts business in Philadelphia, Pennsylvania.  Thomas is a resident of

Philadelphia who applied for a loan from Cendant.

---

[1]Section 1681n(a) of the FCRA creates a private right of action for any consumer who
suffers damages as a result of a person's violation of any requirement of the FCRA.

1

On September 6, 2001 Thomas telephoned Cendant and inquired about a United States Department of Veterans Affairs loan.  Thomas spoke to a loan consultant, Michael J. Stepek, at defendant's place of business and gave Stepek his consent to obtain a copy of his credit report. In connection with his application, Stepek obtained Thomas' credit report from CBC Companies, a consumer reporting agency.  Stepek discussed Thomas' credit report with him.  At this point, Thomas' and Cendant's view of the facts diverge.

Thomas asserts that Cendant denied his application for the VA loan during that conversation, basing its decision on the credit history information contained in the consumer report.  According to Thomas, following the denial of the loan application, Cendant failed to provide him with any information regarding the denial other than saying it was a result of Thomas' credit.  In the same conversation, Thomas applied again to see if there was a different loan for which he would qualify.  After not hearing from Cendant for many weeks, Thomas called Cendant to request the status of his application.  He was told that his application had been denied and Cendant failed to give any explanation.  Thomas then wrote Cendant to request the reasons why he was denied.  On December 27, 2001, Thomas finally received a letter from Cendant explaining the action taken on his application, the credit reporting agency that it had used in connection with his application, and a summary of his rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

Cendant has a different understanding of the conversation between Thomas and Stepek. According to Cendant, Thomas' credit report gave him a poor credit score and showed that he had serious delinquencies on several accounts.  Given his credit report, Thomas would not have qualified for a VA loan.  Stepek did not deny Thomas' application.  Instead, Stepek told Thomas

that he would not qualify for the type of loan for which he had originally applied.  Stepek offered

to order a full factual in-depth credit report and to investigate whether Thomas would qualify for

another type of loan provided by defendant.  As of September 6, 2001, Cendant considered

Thomas' application to be pending while Stepek waited for the full credit report on Thomas.

When Cendant received the full credit report, on November 8, 2001, Cendant determined that

Thomas still did not qualify for the VA loan and denied his application.  At that point, one of

Cendant's loan consultants reviewed the denial with Thomas and took the appropriate steps to

cause a computer generated denial letter to be mailed to Thomas.  The denial letter was reprinted

on December 10, 2001 and faxed to Thomas on December 21 and 27, 2001, a copy of the denial

letter was sent via facsimile to Thomas, and the following day a Cendant loan consultant

reviewed the letter with Thomas over the phone.  This letter provided Thomas with the following

information: (1) the reason for the denial–unacceptable credit; (2) the name, address, and toll-free

number of the consumer reporting agency that provided Thomas' credit report; (3) a statement

that the reporting agency played no part in Cendant's decision to deny Thomas credit and that the

reporting agency would not be able to supply Thomas with specific reasons for the denial; (4) a

statement that Thomas had a right to obtain a free copy of his credit report from the reporting

agency if he made his request within 60 days; and (5) a statement that Thomas had the right to

dispute with the reporting agency and inaccurate or incomplete information contained in his

credit report.

The date of denial is important because a mortgage company has obligations under the

FCRA that begin with the date of any decision based on information contained in a consumer

report that is adverse to the interests of the consumer.

STANDARD OF REVIEW

I.      Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action

for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2004).

In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any

reasonable inferences that may be drawn therefrom, in plaintiffs' complaint and must determine

whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief."

Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) (citations omitted).  Nevertheless, in evaluating

plaintiffs' pleadings I will not credit any "bald assertions."  In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).   Nor will I accept as true legal conclusions or

unwarranted factual inferences.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "The complaint

will be deemed to have alleged sufficient facts if it adequately put the defendant on notice of the

essential elements of the plaintiff's cause of action."  Nami, 82 F.3d at 65.  A Rule 12(b)(6)

motion is proper only if the plaintiff "can prove no set of facts in support of his claim which

would entitle him to relief."  Conley, 355 U.S. at 45-46.

II.     Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that

summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c) (2004).  The moving party "bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions . . . which it believes demonstrate

4

the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (2004).

I must determine whether any genuine issue of material fact exists. An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is material only if the dispute over the facts "might affect the outcome of the suit under the governing law." Id. In making this determination, I must view the facts in the light most favorable to the non-moving party, and the non-moving party is entitled to all reasonable inferences drawn from those facts. Id. However, the nonmoving party may not rest upon the mere allegations or denials of the party's pleading. See Celotex, 477 U.S. at 324. The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). If the evidence for the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted).

DISCUSSION

I.     Defendant's Motion to Dismiss Plaintiff's § 1681m(a) Claim

Accepting as true all well-pleaded allegations of fact and any reasonable inferences that may be drawn therefrom, I conclude that plaintiff's complaint alleges sufficient facts that, if proven, would support a violation of Section 1681m(a) of the Fair Credit Reporting Act.

Accordingly, defendant's motion to dismiss will be denied.

Section 1681m(a) provides that any person who takes adverse action with respect to any consumer on the basis of information contained in a consumer report must provide the consumer with certain statutory notification and disclosure requirements, including information regarding the consumer reporting agency that furnished the consumer report.  See 15 U.S.C. § 1681m(a) (2004).[2]

To avoid a motion to dismiss, Thomas must properly allege that Cendant took adverse action with respect to him.  The FCRA defines "adverse action" to mean "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested," 15 U.S.C. § 1681a(k)(1), referring to 15 U.S.C. § 1691(d)(6) (2004), or "an action taken or determination that is . . . made in connection with an application that was made by, or a transaction that was initiated by, any

_____

[2]Section 1681m(a) of the FCRA provides:
(a) Duties of users taking adverse actions on the basis of information contained in consumer reports. If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall--
(1) provide oral, written, or electronic notice of the adverse action to the consumer;
(2) provide to the consumer orally, in writing, or electronically--
(A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and
(B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
(3) provide to the consumer an oral, written, or electronic notice of the consumer's right--
(A) to obtain, under section 612 [15 U.S.C. § 1681j], a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and
(B) to dispute, under section 611 [15 U.S.C. § 1681i], with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

consumer, or in connection with a review of an account...and adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv). Thomas' complaint alleges that Cendant's denial of the VA loan via telephone on September 6, 2001 was a refusal to grant credit and adverse to his interests, and thus, constituted adverse action.

Thomas must also allege that Cendant based that action on information contained in a consumer report. The FCRA defines "consumer report" to mean, in relevant part:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--(A) credit . . . to be used primarily for personal, family, or household purposes . . .

15 U.S.C. § 1681a(d)(1) (emphasis added). Thomas' complaint alleges that Cendant based its denial of credit, at least in part, on reports generated by one or more credit repositories, as well as the respective underwriting processes of the Federal Home Loan Mortgage Corporation ("Freddie Mac") and the Federal National Mortgage Association ("Fannie Mae").

Cendant argues that Thomas' complaint should be dismissed because Thomas failed to plead that he was seeking credit "primarily for personal, family or household purposes." An applicant denied credit for a commercial purpose does not have a claim under the FCRA. See Podell v. Citicorp Diners Club, Inc., 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996). The FCRA protects consumer credit only; it was not enacted to protect individuals seeking commercial credit. Crane v. Am. Home Mort. Corp., No. 03-5784, 2004 U.S. Dist. LEXIS 12770, *8 (E.D. Pa. July 1, 2004). However, on a motion to dismiss, I must accept as true all reasonable inferences that may be drawn from the complaint. It is reasonable to infer from Thomas' complaint that his credit application was not commercial in nature. Under Federal Rule of Civil

Procedure 8(a)(2)'s lenient notice pleading requirement, a plaintiff must simply plead sufficient facts to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002), quoting Conley v. Gibson, 355 U.S. 41, 47 (1957). Thomas' use of the term "consumer report" implies that he sought credit for personal reasons and was sufficient notice for Cendant to understand Thomas' claim and be able to defend against it. Thus, Cendant's motion to dismiss on this ground will be denied.

Thomas' complaint also alleges that Cendant based its adverse lending decision on information supplied by Freddie Mac and Fannie Mae. Cendant argues that Thomas' complaint should be dismissed because Freddie Mac and Fannie Mae do not, as a matter of law, constitute consumer reporting agencies under the FCRA. The FCRA defines a "consumer reporting agency" to mean, in relevant part:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Freddie Mac and Fannie Mae are government sponsored private corporations that were created to provide a stable secondary market for the purchase of residential mortgage loans. See 12 U.S.C. § 1454 (Freddie Mac); 12 U.S.C. § 1719 (Fannie Mae). Freddie Mac and Fannie Mae provide mortgage lenders with access to their respective automated underwriting tools to allow lenders to prepare mortgages that conform to their purchase requirements. See Weidman v. Fed. Home Loan Mort. Corp., No. 02-7990, 2004 U.S. Dist. LEXIS 20177, *3 (September 29, 2004) (discussing Freddie Mac). Their automated

underwriting tools review information assembled by a lender from the credit application, credit report, and other consumer reports and provide the lender with a preliminary assessment of whether the loan would meet the eligibility criteria for purchase by Freddie Mac or Fannie Mae. Id.  In the present case, Fannie Mae itself did not assemble or evaluate Thomas' credit information for the purpose of furnishing credit reports to Cendant.  Cf. id. at *8 (holding that Freddie Mac qualifies as a "joint user" and is, thus, not subject to the responsibilities of a "consumer reporting agency" under the FCRA).  Instead, Cendant used the automated underwriting system provided by Fannie Mae to evaluate the information provided by Thomas for purposes of determining whether the loan would be eligible for later purchase by Fannie Mae. Although Fannie Mae played a role in Thomas' application, Cendant did not base its adverse lending decision on the unfavorable purchase status accorded to Thomas' application as a result of the automated system.  Fannie Mae did not engage in any affirmative action; it merely allowed Cendant to use its automated program to determine whether a loan to Thomas would be eligible for purchase by Fannie Mae.  Thus, under these facts, Fannie Mae does not constitute a "consumer reporting agency" as defined under the FCRA.  Nevertheless, Cendant admits that it relied on Thomas' consumer credit report supplied by a consumer reporting agency, namely CBC Companies.  Therefore, Cendant's motion to dismiss regarding Thomas' Section 1681m(a) claim will be denied.

Thomas' complaint alleges facts that would require Cendant to comply with the notification and disclosure requirements of Section 1681m(a).  The FCRA requires any person who takes adverse action with respect to any consumer on the basis of information contained in a consumer report to provide the consumer with the following notifications and disclosures: (1)

notice of the adverse action; (2) the name, address, and telephone number of the consumer reporting agency that furnished the report; (3) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; (4) notice of plaintiff's right to obtain a free copy of a consumer report from the consumer reporting agency; and (5) notice of plaintiff's right to dispute the accuracy or completeness of any information in a consumer report furnished by such agency. 15 U.S.C. § 1681m(a). Thomas' complaint alleged that Cendant failed to notify him in a timely manner of the denial of his application for a VA loan and after its denial, Cendant failed to provide him in a timely fashion with: "(a) the name, address and telephone number of the consumer reporting agency from whom it obtained consumer reports, including their toll free numbers; (b) a statement that the consumer reporting agency did not make the adverse action and is unable to provide him with the specific reason why the lender took an adverse action; (c) notice of Plaintiff's right to obtain a free copy of a consumer report from the consumer reporting agency or agencies that furnished the consumer reports it obtained; and (d) notice of Plaintiff's right to dispute the accuracy or completeness of any information contained within the consumer report(s) it obtained." Thus, plaintiff's complaint alleges sufficient facts, that if proven, would support a violation of Section 1681m(a).

Therefore, Cendant's motion to dismiss Thomas' Section 1681m(a) claim will be denied.

## II.    Defendant's Motion to Dismiss Plaintiff's §1681m(b) Claim

Plaintiff's complaint also alleges facts that, if proven, would support a violation of Section 1681m(b) of the FCRA. Accordingly, defendant's motion to dismiss will be denied.

Section 1681m(b) provides that users of information "bearing upon a consumer's credit

worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" must disclose the nature of such information, upon the consumer's written request, where: (1) credit is sought for personal, family, or household purposes; (2) such information is obtained from persons other than consumer reporting agencies; (3) credit is denied; and (4) the consumer has made a written request within 60 days of learning of such adverse action.  15 U.S.C. § 1681m(b).[3]  Section 1681m(b) also provides that the user of such

---

[3] Section 1681m(b) provides:

(1) In general. Whenever credit for personal, family, or household purposes involving a consumer is denied or the charge for such credit is increased either wholly or partly because of information obtained from a person other than a consumer reporting agency bearing upon the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, the user of such information shall, within a reasonable period of time, upon the consumer's written request for the reasons for such adverse action received within sixty days after learning of such adverse action, disclose the nature of the information to the consumer. The user of such information shall clearly and accurately disclose to the consumer his right to make such written request at the time such adverse action is communicated to the consumer.

(2) Duties of person taking certain actions based on information provided by affiliate.

(A) Duties, generally. If a person takes an action described in subparagraph (B) with respect to a consumer, based in whole or in part on information described in subparagraph (C), the person shall--

(i) notify the consumer of the action, including a statement that the consumer may obtain the information in accordance with clause (ii); and

(ii) upon a written request from the consumer received within 60 days after transmittal of the notice required by clause (i), disclose to the consumer the nature of the information upon which the action is based by not later than 30 days after receipt of the request.

(B) Action described. An action referred to in subparagraph (A) is an adverse action described in section 603(k)(1)(A) [15 U.S.C. § 1681a(k)1)(A)], taken in connection with a transaction initiated by the consumer, or any adverse action described in clause (i) or (ii) of section 603(k)(1)(B) [15 U.S.C. § 1681a(k)(1)(B)(i) or (ii)].

(C) Information described. Information referred to in subparagraph (A)--

(i) except as provided in clause (ii), is information that--

(I) is furnished to the person taking the action by a person related by common ownership or affiliated by common corporate control to the person taking the action; and

(II) bears on the credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of the consumer; and

(ii) does not include--

credit information must "disclose to the consumer his right to make such written request at the time such adverse action is communicated to the consumer." Id. As discussed above, Thomas' complaint alleges that he was seeking a VA loan for personal, family, or household purposes, that his credit information was obtained from Freddie Mac and Fannie Mae, that his application was denied, and that after several weeks, he wrote Cendant to request the status of his application. Thomas' complaint also alleges that Cendant failed to advise him of his right to request the reasons for the adverse action it took and the nature of the information contained within the reports that it obtained from third parties. Thomas' complaint further alleges that Cendant has adopted a corporate policy which prohibits its employees from disclosing consumer credit reports, reports produced by the automated underwriting systems of Freddie Mac and Fannie Mae, and defendant's reasons behind an adverse action. Such a policy would discourage Cendant's employees from informing consumers of their right to send a written request to learn of the nature of the third party information obtained. Thus, Thomas' complaint alleges sufficient facts, that if proven would support a violation of Section 1681m(b).

Therefore, Cendant's motion to dismiss Thomas' Section 1681m(b) claim will be denied.

## III.     Defendant's Motion for Summary Judgment Regarding Plaintiff's §1681m(a) Claim

After consideration of all of the issues, viewing the facts in the light most favorable to plaintiff, I conclude that there is a genuine issue of material fact with respect to plaintiff's Section 1681m(a) claim. Accordingly, defendant's motion for summary judgment will be denied.

---

(I) information solely as to transactions or experiences between the consumer and the person furnishing the information; or
(II) information in a consumer report.

As discussed with respect to Cendant's motion to dismiss, Section 1681m(a) requires any person who takes adverse action with respect to any consumer on the basis of information contained in a consumer report to provide the consumer with the following notifications and disclosures: (1) notice of the adverse action; (2) the name, address, and telephone number of the consumer reporting agency that furnished the report; (3) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; (4) notice of plaintiff's right to obtain a free copy of a consumer report from the consumer reporting agency; and (5) notice of plaintiff's right to dispute the accuracy or completeness of any information in a consumer report furnished by such agency.  15 U.S.C. § 1681m(a).  Cendant admits that its based its ultimate denial of Thomas' loan application on his consumer credit report.  However, Cendant argues that it's action with regard to Thomas' loan application did not constitute adverse action.

A.      Adverse Action

Section 1681m(a)'s notification and disclosure requirements are only triggered when a person takes adverse action with respect to a consumer and bases that action upon information contained in a consumer report.  See 15 U.S.C. § 1681m(a).  The FCRA defines "adverse action" broadly to include two relevant definitions.  15 U.S.C. § 1681a(k)(1); Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971, 982 (7th Cir. 2004); Crane, 2004 U.S. Dist. LEXIS at *17-19.  First, the FCRA states that adverse action "has the same meaning as in Section 701(d)(6) of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(6)."  15 U.S.C. § 1681a(k)(1)(A).  The ECOA defines "adverse action" to mean "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially

the amount or on substantially the terms requested."  15 U.S.C. § 1691(d)(6).

Significantly, Regulation B of the ECOA further defines "adverse action" to mean, in relevant part, "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered."  12 C.F.R. § 202.2(c)(1)(i) (2004).  "A denial of credit coupled with a counteroffer that is accepted by the applicant does not trigger the FCRA's disclosure requirements because the applicant has suffered no 'adverse action.'"  Harper v. Lindsay Chevrolet Oldsmobile, LLC, 212 F. Supp. 2d 582, 591 (E.D. Va. 2002).

Cendant argues that, as of September 6, 2001, it did not take any adverse action with regard to Thomas' application because he was "willing to entertain counteroffers from Cendant Mortgage."  In support of its argument, Cendant quotes Thomas' declaration:

> I chose to allow Cendant to determine whether I could qualify for any other type of mortgage.  Cendant told me that they would continue to look into whether I could qualify for any type of mortgage.

Thomas Decl. ¶ 4.

Defendant's argument is unavailing for two reasons.  First, Thomas did not "accept" Cendant's counteroffer.  The language of Regulation B indicates that the counteroffer exception to the definition of adverse action only applies where "the creditor makes a counteroffer . . . *and* the applicant uses or expressly *accepts* the credit offered."  12 C.F.R. § 202.2(c)(1)(i) (emphasis added); see, e.g., Dorsey v. Citizens & Southern Fin. Corp., 678 F.2d 137, 139 (1982) (concluding that the rejection of a credit application followed by a counteroffer that is later accepted is not adverse action under the ECOA); Harper, 212 F. Supp. 2d at 591 (holding that

14

plaintiff suffered no adverse action under the FCRA because plaintiff accepted defendants' counteroffer); Diaz v. Va. Hous. Dev. Auth., 117 F. Supp. 2d 500, 504 (E.D. Va. 2000) (finding no adverse action where lender denied an application for a premium loan contemporaneously with a counteroffer for a standard loan that was ultimately accepted).  Although Thomas was willing to consider counteroffers made by Cendant, Cendant never made such a counteroffer and Thomas never accepted one.  Thus, the counteroffer exception does not apply to these facts.

Second, the denial of credit constitutes adverse action under the FCRA's broader definition of "adverse action."  Beyond the ECOA's definition in Section 1691(d)(6), the FCRA also includes a catch-all phrase that defines "adverse action" to mean, in relevant part, "an action taken or determination that is . . . made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account...and adverse to the interests of the consumer."  15 U.S.C. § 1681a(k)(1)(B)(iv).  This definition is unambiguously broader than the ECOA definition.  See Treadway, 362 F.3d at 982, citing H.R. Rep. No. 103-486, at 26 (1994) ("[T]he definition contains a catch-all phrase that makes clear that any action taken or determination made with respect to a consumer application or a consumer initiated transaction that is adverse to the interests of the consumer constitutes an adverse action[.]); Crane, 2004 U.S. Dist. LEXIS at *18 (same).  It was adverse to Thomas' interests to have his loan application denied.  Thus, there is a genuine issue of material fact as to whether Cendant's denial of Thomas' loan application constituted adverse action.

Cendant also argues that on September 6, 2001, Cendant was not required to provide the notifications and disclosures mandated by the FCRA because Thomas' application was not a "completed application" as a matter of law.  In support of its argument, Cendant cites to a

15

separate provision in Regulation B which defines an "application" to mean:

> an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested.

12 C.F.R. § 202.2(f).  In the same definition, Regulation B defines a "completed application" to mean:

> an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).

Id.  This supplementary definition is not applicable in the FCRA context.  This definition clarifies the term "completed application" found in Section 1691(d)(1) of the ECOA, which states: "Within thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."  15 U.S.C. § 1691(c)(1); see also Castro v. Union Nissan, Inc., No. 01-4996, 2002 U.S. Dist. LEXIS 12917, *13 (N.D. Ill. July 8, 2002).  Despite significant parallels between the FCRA and the ECOA, Section 1691(d)(1) and its clarifying definition only apply to adverse action in the ECOA context.  There is no reference to the term "completed application" or its citation in Section 1681m(a) or (b) of the FCRA, Section 1691(d)(6) of the ECOA (to which the FCRA refers) or Section 202.2(c) of Regulation B.  Thus, Cendant's argument that Thomas' application did not constitute a completed application as a matter of law is without merit.  As a factual matter, however, there remains a genuine issue of material fact as to when Thomas' application was completed for the purposes of granting or denying him credit.  This issue is connected with the timing of the denial of Thomas' application.

16

B.      Timing of the Denial

There is a genuine issue of material fact as to when Cendant denied Thomas' VA loan application.  Thomas alleges that Cendant denied his application on September 6, 2001 and failed to provide the notification and disclosure information in a timely manner following that denial. Cendant disagrees and asserts that it did not deny Thomas' application until November 8, 2001 and, thus, complied with the notification and disclosure requirements of Section 1681m(a) through its denial letter of December 27, 2001.  The difference between these two versions of facts creates a triable issue of fact.

Thomas further argues that even if Cendant denied his application on November 8, 2001, Cendant's denial letter of December 27, 2001 failed to notify him of its adverse lending determination in a timely manner.  Section 1681m(a) does not specify precisely when the user of consumer reports must provide such disclosures.  However, courts have noted that the legislative history and Federal Trade Commission Regulations indicate that disclosure is required contemporaneously or immediately upon creditor's notification of its denial of credit.  See, e.g., Fischl v. Gen. Motors Acceptance Corp., 708 F.2d 143, 150 (5th Cir. 1983), citing H.R. Conf. Rep. No. 91-1587, reprinted in 1970 U.S.C.C.A.N. 4394, 4416 ("The conference substitute now requires the user of the report to convey this information to the consume immediately upon denial of credit, insurance or employment."), H.R. 15073, 91st Cong. (2d Sess. 1970), 116 Cong. Rec. 36571 ("The House conferees succeeded in assuring immediate notification to any individual, who is rejected for credit, insurance or employment because of information in a credit report, of the name and address of the agency which made the report on him.") (Rep. Sullivan), and FTC Pamphlet, Compliance with the Fair Credit Reporting Act at 3 (rev'd ed. 1979) ("[T]he

consumer is given the right to be told the name and address of the consumer reporting agency

when he is rejected for credit, insurance or employment at the time of such denial . . . "); Braxton

v. Farmer's Ins. Group, 209 F.R.D. 654, 656-57 citing 16 C.F.R. § 601 App. C ("Users must

notify consumers when adverse actions are taken."); see also Carroll v. Exxon Co., U.S.A., 434

F. Supp. 557, 560 (E.D. La. 1977) ("The language of 15 U.S.C. § 1681m(a) clearly requires such

disclosure contemporaneously upon notification.").  According to Thomas' version of the facts,

Cendant did not notify Thomas of any adverse action it took on either of the applications until

December 27, 2001, three months after the September 6, 2001 denial and six weeks after the

November 8, 2001 denial.  Thus, there is a genuine issue of material fact as to whether Cendant

notified Thomas of any adverse action in a timely manner following either denial.  Cendant

argues that the case law and legislative history, discussed above, are inapposite to the case at bar

because they do not discuss counteroffers.  However, as discussed above, the counteroffer

exception does not apply here.  Therefore, Cendant's motion for summary judgment with respect

to Thomas' Section 1681m(a) claim will be denied.

IV.     Defendant's Motion for Summary Judgment Regarding Plaintiff's § 1681m(b) Claim

After consideration of all of the issues, viewing the facts in the light most favorable to

plaintiff, I conclude that there is no genuine issue of material fact with respect to plaintiff's

Section 1681m(b) claim.  Accordingly, defendant's motion for summary judgment will be

granted.

As discussed with respect to Cendant's motion to dismiss, Section 1681m(b) of the

FCRA provides that users of information "bearing upon a consumer's credit worthiness, credit

standing, credit capacity, character, general reputation, personal characteristics, or mode of

living" must disclose the nature of such information, upon the consumer's written request, where: (1) credit is sought for personal, family, or household purposes; (2) the information is obtained from persons other than consumer reporting agencies; (3) credit is denied; and (4) the consumer has made a written request within 60 days of learning of such adverse action.  15 U.S.C. § 1681m(b).  In addition, the user of such information has a duty to "clearly and accurately disclose to the consumer his right to make such written request at the time such adverse action is communicated to the consumer."  Id.  If the consumer does make such a written request, the user of information must disclose to the consumer the nature of the information upon which the action is based within 30 days after receipt of the request.  Id.

Thomas alleges that Cendant relied, at least in part, upon the result of Fannie Mae's automated underwriting system in denying Thomas' application.  However, Thomas has produced no evidence beyond his allegations that Cendant relied upon any credit information supplied by any non-consumer reporting agency.  Thomas argues that Fannie Mae's automated underwriting system accorded him an unfavorable status, as a result of his poor credit report, and that Cendant relied upon this status in making its own loan determination.  Rather, the evidence indicates that Cendant's loan determination was based entirely on Thomas' credit report provided by CBC Companies.  Fannie Mae's unfavorable status was an unrelated result of an automated system, which was accessed solely to determine whether the loan could be purchased by Fannie Mae on the secondary market.  Therefore, Cendant's motion for summary judgment regarding Thomas' Section 1681m(b) claim will be granted.

V.      Cendant's Corporate Policies

Thomas' complaint alleges that Cendant violated the FCRA by "intentionally adopting and enforcing a corporate policy that prohibited its employees from disclosing the existence of adverse action that Defendant took in connection with mortgage applications . . . [and] the identities of the consumer reporting agencies and third parties[.]"  In support of this allegation, Thomas cites the deposition testimony of Claudia Kostiuk, the Production Manager of Cendant's department that closes mortgage transactions.  In her deposition testimony, Ms. Kostiuk stated that Cendant had a policy not to provide the identity or other information of third parties from which Cendant has obtained information in connection with a loan application.  Thomas' reliance on this evidence is inapposite.  Ms. Kostiuk's testimony refers to Section "J" of Cendant's Regulatory Compliance Manual, wherein it provides that the non-credit bureau sources, i.e. non-consumer reporting agencies, should not be disclosed.  In contrast, Cendant's policy with respect to credit information from consumer reporting agencies, at Section "I" of the Manual, complies with Section 1681m(a) of the FCRA and states:

> If information from a credit bureau is used and it contributes in any way to the credit decision, the customer must be notified of the credit bureau(s) contacted and the name, address, and telephone numbers of each credit bureau contacted.

Cendant counters with the supplemental declaration of Mr. Stepek, wherein he states that "there was not a corporate policy that prohibited the disclosure of the existence of an adverse action, or the disclosure of the identities of the consumer reporting agencies that were relied upon in taking an adverse action."  The facts do not indicate that Cendant has a policy of non-disclosure with respect to consumer reporting agencies.

As discussed above, Cendant does have a policy of non-disclosure with respect to third

party providers of consumer credit information other than consumer reporting agencies.

However, this policy conforms to the strictures of Section 1681m(b).  In contrast to subsection

(a), subsection (b) does not require the disclosure of the identity of the third party; it only

requires disclosure of the nature of the information obtained from third parties.  15 U.S.C. §

1681m(b)(1).  Thomas' allegations that Cendant maintains a policy of non-disclosure in violation

of the FCRA are not supported by the evidence.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative, motion for

summary judgment is granted in part and denied in part.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH THOMAS, on behalf of himself and all others similarly situated, | : : : | CIVIL ACTION |
| v. | : : | |
| CENDANT MORTGAGE | : | NO. 03-1672 |

ORDER

AND NOW, this 15th day of November 2004, upon consideration of defendant's motion to dismiss or, in the alternative, motion for summary judgment, plaintiff's response and opposition thereto and both parties' further replies, and for the reasons set forth in the accompanying memorandum, it is ORDERED as follows:

1.     Defendant's motion to dismiss is DENIED.

2.     Defendant's motion for summary judgment with respect to plaintiff's Section 1681m(a) claim is DENIED.

3.     Defendant's motion for summary judgment with respect to plaintiff's Section 1681m(b) claim is GRANTED.

_____
                                                s/ Thomas N. O'Neill, Jr.
                                                THOMAS N. O'NEILL, JR., J.